# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| ROGER E. RICE, | Case No. 1:11-cv-102 |
| Plaintiff, | Barrett, J.<br>Bowman, M.J. |
| v. | |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## REPORT AND RECOMMENDATION

Plaintiff Roger E. Rice filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

### I. Summary of Administrative Record

Plaintiff suffered a work-related injury to his shoulder in April 2005 which prevented him from returning to his construction job. Initially, Plaintiff pursued only a worker's compensation claim, but on January 23, 2006 he filed applications both for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"), alleging disability beginning April 6, 2005 due to "neck and back pain" as well as some psychological symptoms. (Tr. 16, 42, 52).

After Plaintiff's claims were denied initially and upon reconsideration, he requested

a hearing *de novo* before an Administrative Law Judge ("ALJ"). Beginning on March 19, 2009 and continued on July 30, 2009, two evidentiary hearings were held, at which Plaintiff was represented by counsel. (Tr. 319-406). At both hearings, ALJ John R. Allen heard testimony from Plaintiff and from a vocational expert (Walter Walsh at the first hearing[1] and Steven Rosenthal at the second). On August 13, 2009, the ALJ denied Plaintiff's applications in a written decision. (Tr. 11-23A).

The record on which the ALJ's decision was based reflects that Plaintiff was 41 years old at the time of the onset date of his alleged disability, and has a limited education, having dropped out of school in the ninth grade. (Tr. 22, 239, 369). Plaintiff had past relevant work as an unskilled heavy construction worker (Tr. 22) and as a roofer at the skilled medium level of exertion. (*Id.*). Plaintiff has not worked since he was injured in August 2005, and lives in a mobile home with his elderly mother. (Tr. 326-327).

Based upon the record and testimony presented, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of the cervical and lumbar spine; left shoulder rotator cuff tear status post surgical repair; and adjustment disorder." (Tr. 13). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. (Tr. 16).

The ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform a limited range of sedentary work as follows:

> He can lift/carry up to ten pounds occasionally and five pounds frequently, can sit for six hours in an eight-hour day, and can stand/walk for forty-five to sixty minutes at a time for up to one to two hours in an eight-hour day. The

---

[1] Dr. Walsh testified only briefly at the first hearing held in March; most of the vocational testimony was provided at the July 2009 hearing.

2

claimant needs to be able to change positions every sixty minutes, but can stay on task. He can occasionally climb stairs balance, stoop, kneel, crouch, and crawl but can never use ladders, ropes, or scaffolds. The claimant can occasionally reach overhead bilaterally, occasionally use foot controls bilaterally, and only occasionally be exposed to high noise or vibrations. The claimant is precluded from work around hazardous machines or at unprotected heights. The claimant is also precluded from tasks that require rapid head turn. In addition, he is limited to simple, repetitive tasks, and is precluded from fast-paced, strict time-limited or high production quota tasks and can work in proximity to other workers, but should generally work alone and can deal with the general public only occasionally or about a third of the workday.

(Tr. 18). Based upon the testimony from the vocational experts, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that, although he could not perform his prior work, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 23). Accordingly, the ALJ determined that Plaintiff was not under disability, as defined in the Social Security Regulations, and was not entitled to DIB or to SSI. (Tr. 23).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff first argues that the ALJ erred by rejecting Plaintiff's complaints of disabling pain. Plaintiff further contends that the ALJ erred by failing to consider the impact of Plaintiff's headaches upon his ability to work. Last, Plaintiff argues that the ALJ erred by failing to fully discuss the findings contained in an examining consultant's report. As discussed below, the Court finds no error requiring reversal or remand.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability" within the definition

of the Social Security Act.  *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at

Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

### B. Plaintiff's Three Claims of Error

#### 1. Severity of Pain and Credibility Finding

Plaintiff offers both a general and a specific criticism of the ALJ's assessment of his pain level and credibility. First, Plaintiff argues that the ALJ did not adequately explain his application of relevant factors. Second, Plaintiff argues that the ALJ improperly determined that his pain level had improved over time.

##### a. Relevant Factors Considered

Plaintiff argues that he is entitled to a finding of disability based upon his allegations of incapacitating pain. However, despite stating that it is "clear that the claimant has resulting pain and limitations from his conditions and previous surgeries," the ALJ determined that "the objective evidence simply fails to support a finding that the claimant is disabled to the extent alleged." (Tr. 21).

Plaintiff asserts error in the ALJ's conclusion that "the record does not document sufficient objective medical evidence to substantiate the severity of the pain and degree of

functional limitations alleged" by the Plaintiff. (Tr. 20). Plaintiff concedes that the ALJ correctly cited Soc. Sec. Ruling 96-7p, but argues that the ALJ "never actually explained how the standard was applied to the facts and circumstances of this particular case." (Doc. 4 at 2).

A review of the ALJ's decision belies Plaintiff's argument. The ALJ cited objective evidence for his determination, including a "recent consultative evaluation [that] revealed that the claimant was able to stand and sit normally and had a normal gait...[with] no motor deficits, no noted muscle spasms, full motion in many joints and normal pulses." (Tr. 21). The ALJ pointed to additional records that confirmed that Plaintiff had "a normal gait and only mild tenderness," contradicting Plaintiff's testimony that he walks with a limp and requires a cane. (*Id*.).

To support his conclusion that Plaintiff had improved over time with treatment, the ALJ noted that Plaintiff reported in December 2005 that his arms and shoulders were no longer painful, and in January 2006 that his neck was better, despite the continuance of low back pain. (Tr. 22, citing Tr. 150). The ALJ pointed to Plaintiff's hearing testimony that he had learned to live with his low back pain for many years, including long before his claimed disability date. (*Id*.). In assessing the credibility of Plaintiff's subjective complaints, the ALJ also relied on the fact that Plaintiff has not sought "much treatment in recent years." (Tr. 22). Although Plaintiff testified that his failure to seek treatment was the result of financial constraints, the ALJ did not credit that explanation because Plaintiff uses only ibuprofen, has not sought emergency room care for intractable pain, and has a daily activity level inconsistent with his asserted pain level. (*Id*.). Plaintiff's activities include "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring

appropriately for grooming and hygiene, using telephones and directories and using a post office," as well as watching television and reading. (Tr. 17). Based upon his conclusion that Plaintiff is partially limited by pain but not so limited as to be disabled, the ALJ imposed significant limitations and restricted Plaintiff to a reduced range of sedentary work.

The ALJ's assessment of Plaintiff's pain level represents an appropriate credibility determination in this case. A disability claim can be supported by a claimant's subjective complaints, as long as there is objective medical evidence of the underlying medical condition in the record. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d at 475. However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476. (citations omitted). An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004).

Evidence that Plaintiff suffers from one or more objective conditions expected to cause some pain does not mean that the ALJ must find Plaintiff to be disabled. Many people experience chronic pain that is less than disabling. *See Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 230-231 (6th Cir. 1990)(affirming ALJ's

determination that back pain from nerve root compression and herniated disc, coupled with degenerative changes, was not disabling). The ALJ's references to the relative lack of recent treatment, the fact that Plaintiff takes only over-the-counter pain medication, Plaintiff's daily activity level, and treatment records reflecting improvement over time were all legitimate factors for the ALJ to consider. *See also White v. Comm'r of Soc. Sec.,* 572 F.3d 272 (6th Cir. 2009)(ALJ appropriately considered non-exhaustive list of factors under SSR 96-7p in assessing credibility).

### b. Evidence of Improvement Over Time

In addition to arguing generally that the ALJ failed to consider relevant factors in assessing his pain level, Plaintiff more specifically criticizes the ALJ's determination that Plaintiff's symptoms improved over time. Plaintiff contends that the ALJ improperly focused on selected records, ignoring other records dated March and April 2006 that reflect that Plaintiff sought additional treatment from pain specialist Dr. Hansen and orthpedist Dr. Paley. To a limited extent, the record supports Plaintiff's argument. However, substantial evidence supports the ALJ's finding when the record is reviewed in its entirety.

### Summary of Chronological Treatment Records

Plaintiff underwent a cervical fusion surgery in December of 2005 (Tr.139-142). Following that surgery, in January 2006 he reported that he was "definitely feeling better," and that he had "significant improvement in his neck." (Tr. 149). In March 2006, Plaintiff reported pain relief in his neck, but some pain in his lower back, for which he was prescribed physical therapy and given a steroid injection (Tr. 147, 167-168).

Plaintiff underwent nerve blocks in April 2006 by Dr. Hansen, which he reported provided him with immediate relief "down to a '1'" on the pain scale, but did not restore full

range of motion. (Tr. 203). Plaintiff returned to Dr. Hansen on May 12, 2006 for additional nerve blocks; following which most of his pain disappeared and his full range of motion was restored. (Tr. 202). A few days later, Dr. Hansen noted that Plaintiff had experienced "good" relief from the nerve block, but scheduled radiofrequency denervation of the left lower cervical facets in early June 2006 due to continued pain in that area. (Tr. 201).

In May 2006, Dr. Jerry McCloud evaluated Plaintiff's records and concluded that Plaintiff could perform a limited range of light work (Tr. 172-179).

On June 5, 2006, Plaintiff underwent the scheduled denervation procedure, with a stated treatment goal to bringing him "closer to the normal activities of daily living." (Tr. 198). On June 28, 2006, Plaintiff underwent a second similar procedure directed to different nerve areas. (Tr. 195). Plaintiff reported immediate (though apparently temporary) 100% pain relief from the nerve block procedures administered in May, June and July, and at a follow-up July visit reported "at least 50%" longer term improvement from his treatments with Dr. Hansen. (Tr. 191-193).

Plaintiff underwent two additional surgeries with Dr. Knable in an attempt to repair a left shoulder rotator cuff tear, first in July and again in September 2006. (Tr. 227-230). Post-operatively, on November 7, 2006, Plaintiff was examined by another orthopedist, Dr. Jonathan Paley. (Tr. 264-266). Based upon Plaintiff's continuing complaints, Dr. Paley opined that Plaintiff might require further surgery for a possible post-operative "re-tear" of his left rotator cuff. (Tr. 264). On November 10, 2006, Dr. Paley injected cortisone into Plaintiff's left shoulder. (Tr. 263). On November 27, 2006, Dr. Paley advised Plaintiff that his insurance had denied approval for additional rotator cuff surgery. (Tr. 262). On December 18, 2006, Dr. Paley recorded Plaintiff's continuing complaints of pain and

continuing "decline" in functional status, with a reference to an upcoming hearing seeking insurance approval for further surgery. Dr. Paley stated on that date that Plaintiff "continues to decline in his functional status and is at high-risk of developing a chronic painful condition with a permanency to his disability" if further treatment was not authorized. (Tr. 261). Plaintiff now complains that the ALJ neglected to discuss the last two notes by Dr. Paley, and in particular his opinion that Plaintiff was "at high-risk" of developing a permanent and disabling painful condition.

The ALJ did discuss Dr. Paley's treatment notes dated November 7 and November 10. (Tr. 15). Although it is true that the ALJ did not discuss the November 27 and December 18 notes, there is no legal requirement to discuss every treatment note. The failure to discuss Dr. Paley's "opinion" in this case does not constitute error. Dr. Paley offered no conclusions concerning Plaintiff's work restrictions or limitations. Later treatment records confirmed that Dr. Paley's concern- that Plaintiff eventually might be disabled without further surgical treatment -proved to be unfounded.

For example, in January 2007, Dr. Rebecca Neiger performed a records review and concluded that Plaintiff could perform a restricted range of light work. (Tr. 267-272). Dr. Neiger noted evidence of improvement (Tr. 274), and concluded that Plaintiff's complaints were only partially credible to the extent that they were "exaggerated relative to objective evidence." (Tr. 272).

In February 2007, Plaintiff was evaluated by Dr. Thomas Bender for purposes of his worker's compensation claim. On April 2, 2007, Dr. Bender opined that Plaintiff had a left shoulder rotator cuff tear, but no evidence of a rotator cuff problem that could be traced to his 2005 work injury. (Tr. 275-278). Rather, Dr. Bender concluded that any impingement

was due to a congenital problem and that, despite being "temporarily" disabled, he should continue to experience improvement with additional treatment recommended by Dr. Paley. (Tr. 277-278).

Upon examination by family physician Dr. Ron Zile in October 2008, Plaintiff had normal gait and posture, with no complaints of headaches, weakness or dizziness. (Tr. 303). Dr. Zile noted decreased range of motion in the left shoulder and right hip, and pain on movement of both areas. (Tr. 304). At an examination by Dr. Frederick Lee on November 7, 2008, Plaintiff's chief complaint was right hip pain, which Dr. Lee hypothesized "could be coming from his back." (Tr. 318). Dr. Lee saw Plaintiff again on December 5, 2008 for "right lower extremity pain," diagnosed a disc protrusion at L4-5, and referred Plaintiff to a neurosurgeon (Tr. 316). Diagnostic testing in November 2008 supported that diagnosis, showing a moderate disk protrusion and normal hip. (Tr. 15, 283, 311). On December 10, 2008, Plaintiff was seen by Dr. Aaron Roberts for a chief complaint of "low back pain with some right-sided buttocks pain" that had been ongoing "for years." Dr. Roberts diagnosed a muscle strain versus irritation, glut medius pain, and degenerative disc disease, but noted normal strength and gait, and "no acute distress." (Tr. 314-315).

On December 15, 2008, Plaintiff had a consultative examination with Dr. Karen Evans for "chronic low back pain for the past 15 years." She also noted normal gait, no muscle atrophy and normal strength upon examination, with a diagnosis of "chronic lumbar sprain" and a recommendation for physical therapy. (Tr. 309-310).

After review of ambiguities in the records at the first evidentiary hearing in March 2009, the ALJ ordered one final consultative evaluation by Dr. Richard Sheridan, an orthopaedic surgeon. In April 2009, Dr. Sheridan found that Plaintiff had a normal gait and

no motor deficits in either his arms or legs. (Tr. 284-286). Dr. Sheridan additionally found a full range of motion in both of Plaintiff's shoulders, no tenderness or spasm in either shoulder, and "no evidence of rotator cuff tear or tendinitis, or impingement syndrome...dislocation, or arthritis in either shoulder." (Tr. 286). Muscle testing confirmed full strength throughout Plaintiff's body, with no muscle spasms and full range of motion, with the exception of some reduced range of motion in Plaintiff's lumbar spine. (Tr. 288-294). Dr. Sheridan found "no obvious residual" symptoms from Plaintiff's 2005 diskectomy and fusion, or from either of his two rotator cuff surgeries. (Tr. 289). Dr. Sheridan opined that Plaintiff could perform a limited range of sedentary work. (Tr. 295-299). The ALJ heavily relied upon Dr. Sheridan's opinions in formulating Plaintiff's RFC.

Although Plaintiff argues that the ALJ erred by focusing on select medical records to support his conclusion that Plaintiff's pain had improved over time, Plaintiff himself simply focuses on a handful of different records dating to 2006 from Drs. Hansen and Paley. *See White v. Comm'r of Soc. Sec.,* 572 F.3d at 284-285 (rejecting argument that the ALJ erred in finding improvement over time, where plaintiff himself cherry picked records, and ALJ's analysis reflected "difficult task" of weighing evidence). An ALJ is not required to discuss every medical record in detail. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cri. 1989). In this case, neither Dr. Hansen nor Dr. Paley opined that Plaintiff was permanently disabled, nor did either physician express an opinion on any ongoing restrictions or work limitations. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010).

As the Defendant persuasively argues, it was not unreasonable for the ALJ to focus on later records from 2007-2009 to conclude that Plaintiff's condition had improved over

time. Dr. Neiger's January 2007 evaluation, Dr. Bender's 2007 examination, testing and examination results from 2008, and Dr. Sheridan's 2009 examination all constitute substantial evidence to support the ALJ's conclusions in this regard. Plaintiff argues that the ALJ should not have relied upon Dr. Neiger's 2007 evaluation because she did not have access to later evidence concerning Plaintiff's condition. However, the ambiguity in the record and need for a longer longitudinal view was one reason that the ALJ requested and gave great weight to the additional consultative exam by Dr. Sheridan in 2009.

The ALJ ordered the additional examination from an orthopaedic specialist after determining that Plaintiff's medical records reflected a mixture of relatively significant pain complaints in 2006, but post-surgical clinical findings in 2007 and 2008 that did not necessarily support the same level of complaints. It was not error for the ALJ to rely upon Dr. Sheridan's 2009 assessment in drawing conclusions based upon the record as a whole, nor was it error for the ALJ to view the more negative records from Drs. Hansen and Paley as reflective of a relatively temporary setback in the level and Plaintiff's long-term treatment and response.

## 2. Evaluation of Plaintiff's Headaches

As a second ground for relief, Plaintiff argues that the ALJ erred by failing to consider limitations caused by Plaintiff's headaches. Plaintiff does not argue that his headaches constitute a "severe" impairment, but instead contends that the ALJ failed to comply with regulations requiring him to "consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(e).

The ALJ referenced Plaintiff's headaches in the context of his discussion of Plaintiff's

alleged level of disabling pain. The ALJ stated that Plaintiff testified that he "starts to get bad headaches" upon exertion such as raising his arms. (Tr. 20). The ALJ also noted that Plaintiff testified that his neck pain "causes him severe headaches," and that he has to "lie down between two and six hours" and "shut his eyes and close the doors and curtains" when the most severe headaches occur, approximately twice per week. (Tr. 21). However, Plaintiff uses only over-the-counter ibuprofen for pain, and has never sought emergency room care. (Tr. 21-22).

Defendant argues that Plaintiff has waived any argument pertaining to his headaches based upon his "wholly conclusory and undeveloped" argument. Indeed, Plaintiff's "headache" claim is stated in a single sentence, followed by a quotation drawn from SSR 96-9p. (Doc. 4 at 9). In addition to arguing waiver, the Defendant points out that several 2009 records either deny the existence of headache or are silent as to the existence of that symptom. (Tr. 284, 303).

While Plaintiff's argument is cursorily stated, I decline to consider the claim waived. Rather, I find that substantial evidence supports the ALJ's failure to find additional functional limitations based upon that symptom. In addition to the ALJ's discussion and medical records, the above analysis concerning the ALJ's assessment of Plaintiff's subjective reports of disabling pain applies equally to the consideration of his headaches. As discussed, the ALJ's credibility determination and evaluation of Plaintiff's overall pain reflects no error.

### 3. Findings of Examining Consultant, Dr. Thomas Bender

In his third assertion of error, Plaintiff argues that the ALJ failed to "fully" discuss the findings of Dr. Thomas Bender, the physician who evaluated Plaintiff for purposes of his

Ohio Workers' compensation claim on February 16, 2007. The ALJ both referenced Dr. Bender's report and quoted from a portion of it. (Tr. 15). Plaintiff argues, however, that the ALJ failed to discuss the portions of Dr. Bender's report that discussed Dr. Bender's opinions that: (1) Plaintiff was "temporarily" disabled; (2) that Plaintiff had not yet reached maximum medical improvement; and (3) that additional treatment, including recommended surgery, was "appropriate" for Plaintiff's rotator cuff tear.

The ALJ stated: "While it is noted that the claimant was found to be temporarily disabled when he had his neck surgery, there is no evidence that any treating or examining medical source has opined since that time that the claimant is unable to work." (Tr. 20). While it is unclear whether the ALJ's reference to Plaintiff being "temporarily disabled," was a reference to Dr. Bender's opinion, the ALJ was accurate in stating that no physician has ever opined that Plaintiff is permanently disabled.

The Defendant argues that even if the ALJ failed to reference Dr. Bender's temporary disability opinion, no error occurred because that opinion was "conclusory and not supported by sufficient explanation or objective evidence." (Doc. 7 at 13). In any event, Dr. Bender very clearly opined that Plaintiff would continue to improve with treatment. (Tr. 277-278). In his reply memorandum, Plaintiff argues that Dr. Bender's 2007 conclusion that Plaintiff still had symptoms and required further treatment including additional rotator cuff surgery is contrary to the ALJ's conclusion that Plaintiff's impairments improved over time. However, as fully discussed herein, the ALJ's finding that Plaintiff's symptoms did in fact improve - despite Dr. Bender's more guarded prognosis - is supported by 2008 and 2009 clinical records and evaluations.

In his reply memorandum, Plaintiff also states that "pursuant to Ohio Revised Code

Section 4123.56, a claimant is entitled to temporary total disability benefits if he or she is unable to return to their former position of employment as a result of the injuries allowed in their respective Ohio Workers' Compensation claims." (Doc. 8 at 2). Given that the instant appeal concerns the application of federal law, the citation to state law is not relevant to the issues presented.

### III. Conclusion and Recommendation

The ALJ committed no reversible error, and his finding of non-disability is well-supported by substantial evidence in the record presented. Therefore, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

                             */s Stephanie K. Bowman*
                             Stephanie K. Bowman
                             United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ROGER E. RICE,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant

Case No. 1:11-cv-102

Barrett, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).